## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELI MOR, Derivatively on Behalf of AMERISOURCEBERGEN CORPORATION, and Individually on Behalf of Himself and All Other Similarly Situated Shareholders of AMERISOURCEBERGEN CORPORATION, | ) ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | )   C.A. No. 1:13-cv-00242-RGA ) |
| STEVEN COLLIS, RICHARD GOUCHNAUER, RICHARD GOZON, EDWARD HAGENLOCKER, KATHLEEN HYLE, MICHAEL LONG, HENRY MCGEE, CHARLES COTROS, and JANE HENNEY, | ) ) ) ) ) ) |
| Defendants, | ) ) ) |
| -and- | ) ) |
| AMERISOURCEBERGEN CORP., a Delaware corporation, | ) ) ) ) |
| Nominal Defendant. | ) |

## OBJECTION OF ICLUB INVESTMENT PARTNERSHIP
## TO PROPOSED DERIVATIVE SETTLEMENT
## AND NOTICE OF INTENT TO APPEAR

OF COUNSEL:

KESSLER TOPAZ
MELTZER & CHECK, LLP
Eric L. Zagar
Matthew A. Goldstein
280 King of Prussia Road
Radnor, Pennsylvania 19087
(610) 667-7706

Dated:  October 14, 2014

PRICKETT, JONES & ELLIOTT, P.A.
Michael Hanrahan (DE Bar No. 941)
Paul A. Fioravanti, Jr. (DE Bar No. 3808)
Eric J. Juray (DE Bar No. 5765)
1310 N. King Street
Wilmington, Delaware 19801
(302) 888-6500

*Attorneys for Objector ICLUB Investment Partnership*

# TABLE OF CONTENTS

**Page**

SUMMARY OF OBJECTION ................................................................................................1

I.   THE DERIVATIVE SETTLEMENT SECRETLY SEEKS TO IMMUNIZE A GRANT OF REPLACEMENT OPTIONS AND RESTRICTED STOCK ................................................4

    A.   The August 7, 2013 Awards and August 9, 2013 8-K ...........................................4

    B.   The Settlement Agreement, Release and Notice ....................................................6

    C.   There Should Be No Settlement and No Release ....................................................7

II.  THE DERIVATIVE SETTLEMENT IMPROPERLY SEEKS TO RELEASE DIRECT AND CLASS CLAIMS OF CURRENT AND FORMER ABC STOCKHOLDERS ...................8

    A.   A Direct/Class Claim Was Asserted in This Action...............................................8

    B.   The Settlement Agreement and Preliminary Order Confirm the Settlement Is Only a Derivative Settlement .......................................................................................9

    C.   The Parties Seek Dismissal and Release of, and Injunctive Relief Concerning, Direct and Class Claims Belonging to the ABC Stockholders.............................9

    D.   The Derivative Settlement Does Not Meet the Requirements of Rule 23.............12

III. THE PROPOSED RELEASE IS OVERBROAD AND INVALID IN OTHER RESPECTS......................................................................................................14

    A.   The Release and Waiver in the Judgment Exceeds the Description in the Notice 15

    B.   The Release Improperly Extends Beyond the Operative Facts of the Delaware Action .......................................................................................................16

    C.   Improper Release of Future Claims....................................................................18

CONCLUSION ................................................................................................19

\570740

## TABLE OF AUTHORITIES

**Cases**

*Carlton Investments v. TLC Beatrice Int'l Holdings, Inc.*,
   1997 WL 208962 (Del. Ch.) ........................................................................................11, 12

*Green v. Phillips*,
   2000 WL 33521109 (Del. Ch.) ..................................................................................15, 18

*Hamilton v. City of Wilmington*,
   2002 WL 169265 (D. Del.) ...............................................................................................11

*In re Advanced Mammography Sys., Inc. S'holders Litig.*,
   1996 WL 633409 (Del. Ch.) ...............................................................................................6

*In re Louisiana-Pacific Corp. Deriv. Litig.*,
   701 A.2d 238 (Del. Ch. 1997) ...................................................................................9, 11, 12

*In re MAXXAM, Inc.*,
   659 A.2d 760 (Del. Ch. 1995) .............................................................................................1

*In re Phila. Stock Exch., Inc.*,
   945 A.2d 1123 (Del. 2008) ......................................................................................11, 15, 19

*In re School Asbestos Litig.*,
   921 F. 2d 1330 (3d Cir. 1990) ...........................................................................................14

*In re Triarc Cos., Inc.*,
   1998 WL 743673 (D. Del.) ...............................................................................................12

*IPSCO Steel (Alabama), Inc. v. Blaine Constr. Corp.*,
   371 F.3d 150 (3d Cir. 2004) ..............................................................................................12

*MCA, Inc. v. Matsushita Elec. Indus. Co., Ltd.*,
   785 A.2d 625 (Del. 2001) .................................................................................................12

*McGowan Investors LP v. Meyer*,
   392 F. App'x 39 (3d Cir. 2010) ....................................................................................14, 15

*Nottingham Partners v. Dana*,
   564 A.2d 1089 (Del. 1989) ...............................................................................................15

*Prezant v. De Angelis*,
   636 A.2d 915 (Del. 1994) .................................................................................................12

*Schwartz v. Dallas Cowboys Football Club, Ltd.*,
   157 F. Supp. 2d 561 (E.D. Pa. 2001) .................................................................................15

*Swann Keys Civic Assoc. v. Shamp*,
   971 A.2d 163 (Del. 2009) .................................................................................................12

*UniSuper Ltd. v. News Corp.*,
   898 A.2d 344 (Del. Ch. 2006) ....................................................................................15, 18, 19

**Rules**

Federal Rule of Civil Procedure 23 ........................................................................................passim

570740

ICLUB Investment Partnership ("ICLUB"), a stockholder of AmerisourceBergen Corp. ("ABC" or the "Company") and the plaintiff in a first-filed stockholder derivative action on behalf of ABC captioned *ICLUB Investment Partnership v. Collis, et al.*, No. 13-cv-00688 (E.D. Pa.) (the "*ICLUB* Action), hereby (i) objects to the derivative settlement (the "Derivative Settlement") proposed in this later-filed action (the "Delaware Action"); and (ii) notifies the Court and the parties that ICLUB, through its counsel, intends to appear at the Settlement hearing scheduled to be held on October 28, 2014.

## SUMMARY OF OBJECTION

The *ICLUB* Action and the Delaware Action asserted that defendant Steven Collis ("Collis"), ABC's Chief Executive Officer, was granted options during calendar year 2012 that were in excess of the 300,000 share limit of ABC's 2009 Management Incentive Plan (the "2009 Plan" or the "Plan") on grants to one individual during a single calendar year. The defendants entered into a purported settlement with the plaintiff in the Delaware Action providing, *inter alia*, for cancellation of 272,423 options granted to Collis in calendar year 2012. ICLUB was excluded from the settlement discussions. The Derivative Settlement represents a "transmutation of the settlement process" because:

> [T]his case has the unmistakable footprint of an effort by defendants to negotiate a settlement with an adversary that they preferred, in order to extinguish claims being pressed by the adversary whom they disfavored, and to relegate that disfavored adversary to the status of an objector to the settlement.[1]

In their eagerness to exclude ICLUB, the parties to the Delaware Action have proposed a settlement so fundamentally flawed that it cannot be approved.

---

[1] *In re MAXXAM, Inc.*, 659 A.2d 760, 776 (Del. Ch. 1995). Because of the exclusion of ICLUB, the settlement should be carefully scrutinized. *Id.*

\570740

The Court should not approve the Derivative Settlement for several reasons.

(1)     The cancellation of 272,423 excess options granted to Collis during calendar 2012 (the "Option Cancellation"), which is the supposed centerpiece of the Derivative Settlement, already occurred on August 7, 2013, eight days before the Stipulation of Settlement (the "Settlement Agreement") was signed on August 15, 2013.   The invalidity of the options was acknowledged by ABC and Collis in a Form 8-K filed with the U. S. Securities and Exchange Commission ("SEC") on August 9, 2013 (the "8-K").[2]   The 8-K discussed and attached grants of a 107,826 share stock option and 77,995 shares of restricted stock made to Collis on August 7, 2013 as replacement for the invalid options canceled in the Option Cancellation (the "Replacement Grants").   The 8-K did not mention any litigation over the 272,423 options or any settlement.   The Settlement Agreement, other filings in this Court, the brief of plaintiff Eli Mor ("Plaintiff" or "Mor") in support of the Settlement ("Plaintiff's Brief"), and the Notice of Pendency and Proposed Settlement of Amerisource Bergen Action (the "Notice")[3] contain no reference to the Replacement Grants.   Nor do they disclose that the Option Cancellation has already occurred—and actually happened <u>before</u> the Settlement Agreement was signed.   Instead, the parties agreed to a broad release of liability that, without mentioning the Replacement Grants, would bar all claims relating to those grants.

(2)     The Derivative Settlement settles only derivative claims and provides only derivative relief, but would improperly release direct claims belonging to current and former ABC stockholders.   The Verified Shareholder Derivative and Class Action Complaint filed in the Delaware Action (the "Delaware Complaint") [D.I. 1], asserted a direct claim on behalf of a putative class of ABC stockholders as of January 2, 2013 (the "Putative Class").   Neither the

---

[2] The 8-K is attached as Exhibit A.

[3] The Notice is attached as Exhibit B.

2

Putative Class nor any other current or former ABC stockholders will receive any consideration from the Derivative Settlement.  The Derivative Settlement purports to release class claims but does not provide for class certification, class notice or appointment of any class representative or class counsel.  In short, the parties to the Delaware Action are attempting to release individual claims of ABC stockholders who are not parties without complying with numerous requirements of Federal Rule of Civil Procedure 23 ("Rule 23").

(3)    The Derivative Settlement release is also overbroad in numerous other respects, including releasing claims beyond those the Notice says are to be released, releasing claims that are unrelated or only remotely related to the allegations in the Delaware Complaint, and releasing future claims.

3

## I.   THE DERIVATIVE SETTLEMENT SECRETLY SEEKS TO IMMUNIZE A GRANT OF REPLACEMENT OPTIONS AND RESTRICTED STOCK

The most fundamental flaw of the Derivative Settlement is that the parties have not fully disclosed to the Court or the stockholders the full bargain that they struck. The recitals to the Settlement Agreement (¶15) reference a July 26, 2013 Memorandum of Understanding (the "MOU"),[4] and the Settlement Agreement was signed on August 15, 2013. However, the Settlement Agreement, the submissions the parties have made to the Court, including Plaintiff's Brief, and the Notice sent to ABC stockholders as of August 6, 2014 do not mention critical facts that occurred between the MOU and the Settlement Agreement that cast the parties' bargain in a very different light and suggest that the parties may be attempting to slip a collusive settlement by the ABC stockholders and the Court.

### A.   The August 7, 2013 Awards and August 9, 2013 8-K

On August 9, 2013, ABC filed the 8-K with the SEC. The 8-K revealed that on August 7, 2013, a week before the Settlement Agreement was signed, ABC's Compensation Committee granted Collis a stock option for 107,826 shares and a restricted stock award of 77,995 shares. The 8-K explained the reason for the award as follows:

> The Committee granted the August 2013 equity award to Mr. Collis to replace the value of a portion of an unvested stock option (originally covering an aggregate of 373,250 shares of Common Stock) granted to Mr. Collis on November 14, 2012 as part of his fiscal year 2013 equity award. A portion of the November 2012 option was void because the aggregate number of shares of Common Stock subject to equity grants made to Mr. Collis in calendar year 2012 inadvertently exceeded the per person limit under the Plan by 272,423 shares. The Plan's per person limit restricts the number of shares of Common Stock that may be subject to awards to any individual in respect of any calendar year. Accordingly, the November 2012 option was reduced to cover 100,827 shares of Common Stock. The November 2012 option has an exercise price of $40.21 per share.

---

[4] Settlement Agreement (Recitals), ¶15.

The cancellation of the 272,423 options reduced the shares granted to Collis in calendar year 2012 so that he did not receive shares in excess of the Plan limit for that calendar year. Because the Replacement Grants were issued in calendar year 2013, those grants would count against the share limit on grants to Collis during the 2013 calendar year.

The 8-K made no mention of the MOU, the Delaware Action or the *ICLUB* Action. The 8-K attached a Nonqualified Stock Option Grant and a Restricted Stock Award to Employee, both signed by Collis and ABC (the "Grant Agreements'),[5] reflecting the August 7, 2013 Replacement Grants. Those binding agreements both recited that:

> On November 14, 2012, the Company granted to the Participant an option to acquire up to 373,250 Shares (the "November 2012 Option") with respect to the 2013 fiscal year compensation. It has been determined that a portion of the November 2012 Option covering 272,423 Shares was invalidly granted and accordingly, the maximum number of Shares subject to the November 2012 Option is 100,827 Shares.
>
> The Company has agreed to grant and issue to the Participant shares of restricted stock and a stock option in replacement of the portion of the November 2012 Option that was deemed to be invalid.

Both grant agreements also contained the following acknowledgement:

> By accepting the terms of this Agreement, the Participant acknowledges that (i) the Participant may exercise the November 2012 Option (subject to the terms and conditions of such option) for up to 100,827 Shares only and (ii) that the November 2012 Option is invalid with respect to 272,423 Shares and the Participant shall have no right to receive any Shares or other consideration with respect to such invalid portion of the November 2012 Option.

Thus, before the Settlement Agreement was executed on August 15, 2013:

---

[5] *See* Ex. A (Exs. 10.1 and 10.2).

- ABC and Collis had agreed and publicly disclosed that the November 2012 Option was invalid and void as to 272,423 shares.

- ABC and Collis had agreed and publicly disclosed that ABC had granted and issued options and restricted stock in replacement of the invalid options.

### B.      The Settlement Agreement, Release and Notice

The Settlement Agreement provides that "[t]he Compensation Committee and/or Board will cancel, and Collis shall relinquish all rights to, 272,423 of the stock options awarded to November 14, 2012 pursuant to the Plan."[6]  The use of "will" and "shall" indicates that the cancellation and relinquishment will occur in the future.  In fact, prior to the execution of the Settlement Agreement, Collis already had relinquished the options, the Company had already canceled those options as void and invalid and ABC and Collis had publicly announced the relinquishment and cancellation.  If the Settlement Agreement is terminated or canceled, the parties supposedly would return to their prior positions.[7]  However, they could not do so because ABC has already publicly admitted that the options are invalid, canceled those options and issued the Replacement Grants.  Thus, the options are gone and the claims for their cancellation are moot.  Indeed, in a January 6, 2014 letter to the Court in the *ICLUB* Action, Defendants admitted that the Option Cancellation had mooted the Delaware and ICLUB Actions.[8]

The Notice states that in the Derivative Settlement the ABC Board "<u>shall</u> cancel, and Collis <u>shall</u> relinquish all rights to 272,423 stock options awarded to Collis on November 14, 2012 pursuant to the Plan." (Emphasis added).  It does not disclose that as of August 7, 2013 the

---

[6] Settlement Agreement, IIA ¶1.

[7] *Id.* IIE ¶2.

[8] Moot claims cannot be settled and released. *In re Advanced Mammography Sys., Inc. S'holders Litig.*, 1996 WL 633409, at *1 (Del. Ch.).

570740

options had already been relinquished and canceled in exchange for the Replacement Grants, before the parties even entered into the Settlement Agreement.

Paragraph 10 of the Judgment contains a release ("the Release") that does not just bar the claims related to the challenged November 14, 2012 option grant to Collis. It also purports to release all claims relating to "the compensation, including equity compensation under the Plan, awarded to Collis for fiscal years 2012 and 2013." As Paragraph 7 of the recitals to the Settlement Agreement acknowledges, ABC's "fiscal year 2013" extended from "October 1, 2012 through September 30, 2013." Thus, the Replacement Grants made on August 7, 2013 are within the Release.

### C.    There Should Be No Settlement and No Release

When Plaintiff entered into the Settlement Agreement, he knew or should have known that ABC and Collis had already publicly admitted that 272,423 of the options granted in November 2012 were invalid and void, that those options had been canceled and that the Replacement Grants had been made pursuant to binding agreements. Plaintiff knew or should have known before signing the Settlement Agreement that in the Settlement he and ABC were releasing claims with respect to the Replacement Grants. Instead of recognizing that the claims regarding the November 2012 option grant to Collis were moot, Plaintiff chose to give defendants a broad release with respect to the Replacement Grants and a host of other matters in exchange for defendants' agreement to a $1 million attorneys' fee. The parties filed settlement documents, letters and briefs with this Court, got this Court to enter the Preliminary Order and have asked the Court to approve the Settlement and Release, without ever mentioning that the 272,423 options were already canceled on August 7, 2013, before the Settlement Agreement was signed, or that the Release would bar claims with respect to the Replacement Grants issued on August 7, 2014 in exchange for the canceled options.

570740

## II.   THE DERIVATIVE SETTLEMENT IMPROPERLY SEEKS TO RELEASE DIRECT AND CLASS CLAIMS OF CURRENT AND FORMER ABC STOCKHOLDERS

### A.   A Direct/Class Claim Was Asserted in This Action

The Delaware Complaint is titled "Verified Shareholder Derivative and Class Action Complaint." Paragraph 1 of the Delaware Complaint states that in addition to derivative claims, Plaintiff also asserts "on behalf of himself and the public stockholders of AmerisourceBergen" a "direct claim" for breach of fiduciary duty because the Board used a false and misleading proxy statement dated January 18, 2013 (the "2013 Proxy Statement") in connection with ABC's February 28, 2013 Annual Meeting of Stockholders. The direct disclosure claim is described at paragraphs 31-36 of the Delaware Complaint. Paragraphs 46-52 contain class action allegations, including stating that the case is brought "as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure" on behalf of a class of "owners of ABC common stock as of January 2, 2013, the record date for the ... annual meeting." Count IV of the Complaint contained the "Direct Claim Against Defendants" for "Breach of Fiduciary Duty of Candor In Connection With The 2013 Proxy." The relief the Complaint requests includes certifying Count IV as a class action and appointing Plaintiff as class representative and plaintiff's counsel as class counsel. The Delaware Complaint also requests that the annual meeting be enjoined until corrective disclosure is issued or that a revote on the election of directors be held.

The Notice states that "[t]he Settlement will fully resolve the ABC Action" and that Plaintiff's "stockholder derivative and direct action on behalf of ABC and its stockholders" included a claim "that ABC's public statements had failed to disclose" its practice regarding the equity award to defendant Collis in 2012. *Id.* at 2. The Notice states that "Plaintiff believes the claims in the ABC Action have merit" but that there are "possible defenses to the claims asserted in the ABC Action." *Id.* at 3.

570740

**B.     The Settlement Agreement and Preliminary Order Confirm the Settlement Is Only a Derivative Settlement**

The Settlement Agreement is entered into only by Plaintiff Mor, ABC (as nominal defendant) and the defendant directors. It does not indicate that Mor is acting as a representative of the ABC stockholders. The Settlement Agreement contains no provisions for class definition, class certification, class notice or appointment of a class representative or class counsel. The Settlement Agreement says the settlement is "subject to approval of the Court pursuant to Federal Rule of Civil Procedure 23.1," which governs derivative claims. There is no mention of Rule 23, which governs class claims. The Preliminary Order recites that the parties "have made an application for an order preliminarily approving the proposed settlement of this stockholder derivative action."[9]

**C.     The Parties Seek Dismissal and Release of, and Injunctive Relief Concerning, Direct and Class Claims Belonging to the ABC Stockholders**

Plaintiff and the defendants have entered into a derivative settlement. All the relief achieved in the Derivative Settlement is derivative in nature, *i.e.*, the relief is directed to ABC, not the individual stockholders. Members of the Putative Class and other current and former ABC stockholders will receive no consideration. Yet the Derivative Settlement will release defendants from a wide array of direct and class claims, many of which are unrelated or only remotely related to the allegations of the Delaware Complaint.[10]

The Release in Paragraph 10 of the proposed Judgment confirms that the parties seek release of direct claims (both individual and class) belonging to ABC's stockholders, not just claims belonging to ABC. The Judgment defines Releasing Parties to include:

---

[9] As the Delaware Court of Chancery has noted, busy trial judges rely heavily on counsel for the parties in signing orders approving settlements. *In re Louisiana-Pacific Corp. Deriv. Litig.*, 705 A.2d 238, 240 & n.1 (Del. Ch. 1997).

[10] *See* section I.B. *infra.*

570740

> Plaintiff, ABC, and *the stockholders of ABC* on behalf of *themselves and* of their heirs, *predecessors*, *successors*, representatives, and *assigns* and, with respect to corporate entities, on behalf of each of their parents, subsidiaries, affiliates, assignees, predecessors, successors, officers, directors, employees, partners, members, representatives, and agents ....
> (Emphasis added).

The Release is not limited to ABC stockholders on a particular date or during any particular time frame and includes "predecessors, successors, representatives and assigns." Thus, the Release appears to extend to anyone who ever held ABC stock. The definition of Released Claims in the Release includes all claims "whether direct or derivative."

Paragraph 11 of the Judgment provides that all claims described in Paragraph 10 are extinguished and that the Releasing Parties waive all rights under laws limiting releases, including the release of unknown claims. Paragraph 9 of the Preliminary Order had the Court enjoin ABC's stockholders from "asserting any claims, either directly, representatively, derivatively, or in any other capacity." Paragraph 12 of the Judgment permanently enjoins the Releasing Parties from "instituting, asserting, or prosecuting, either directly, representatively, or in any other capacity" any of the Released Claims.

The Notice (p. 4) says the Court's Judgment will "release all claims of any nature ... from the beginning of time to the present" that have, could or might have been "asserted by or on behalf of Defendants, ABC shareholders, and/or Plaintiff (individually on behalf of ABC shareholders and derivatively on behalf of ABC)." Page 1 of the Notice contains two different definitions of "Current ABC Stockholders."[11] Moreover, the parties appear to limit the right to object to those who held ABC stock continuously from February 29, 2012 through the date of the

---

[11] The first definition is all owners of ABC stock as of August 6, 2014; the second is limited to owners as of August 6, 2014 who continue to hold until the Settlement Hearing.

Settlement Hearing.[12]   However, like the Release itself, the Notice's description of the Release contains no limitation to "current" ABC Stockholders or to ABC stockholders who have held continuously since February 29, 2012, but instead says the Release applies to all claims of "ABC stockholders," including their predecessors, successors and assigns, from the beginning of time to the present."

The parties to the Delaware Action are attempting to release direct and class claims through a strictly derivative settlement.  In considering a settlement, the Court is charged with protecting absent class members to be sure they receive adequate consideration for the release of class claims.[13]   The scope of a release cannot be limitless because of due process requirements.[14] One obvious limitation on the scope of permissible releases is that a party cannot release claims that do not belong to that party.  Therefore, a derivative settlement of claims belonging to a Delaware corporation cannot release claims belonging to the stockholders of the corporation.[15] The Court is not authorized to release the property of absentee stockholders (*i.e.*, claims belonging to those stockholders) when no party shares the property interest of the absentees that is to be released, and the absentee stockholders have been given no opportunity to opt out and will receive no consideration in exchange for the release of their rights.[16]   Because the corporation does not share rights in the property of its stockholders, it cannot release that

---

[12] The Summary Notice of Pendency and Proposed Settlement (the "Summary Notice") requires that an objector submit proof of ownership through the date of the Settlement Hearing, including proof of shares purchased on or before February 29, 2012.  The Notice contains a garbled version of the requirement of proof of ownership as of February 29, 2012 because it leaves out words.

[13] *Hamilton v. City of Wilmington*, 2002 WL 169265, at *1 (D. Del.).

[14] *In re Phila. Stock Exch., Inc.*, 945 A.2d 1123, 1145 (Del. 2008).

[15] *Louisiana-Pacific*, 705 A.2d at 240; *Carlton Investments v. TLC Beatrice Int'l Holdings, Inc.*, 1997 WL 208962, at *1-2 (Del. Ch.).

[16] *Louisiana-Pacific*, 701 A.2d at 240.

property as part of a settlement of claims it owns.[17]   Accordingly, the Derivative Settlement

cannot be approved because it releases claims the parties have no power to release.

**D.     The Derivative Settlement Does Not Meet the Requirements of Rule 23**

The requirements of Rule 23 protect the rights of absentee stockholders with respect to

release of claims belonging to them.[18]  Due process requires compliance with Rule 23 in order to

release claims of absent stockholders.[19]  In considering whether to approve a settlement, "the

district court must be vigilant in protecting the due process rights belonging to the class

members."[20]  If the principles of due process are not followed, members of the class cannot be

bound by a judgment or settlement.[21]

Rules 23(a) and (b) provide standards for class certification.  Rule 23 (c)(1)(A) provides

that, at an early practicable time after a person sues as a class representative, "the court must

determine by order whether to certify the action as a class action."  Rule 23(c)(1)(B) requires that

the order define the class and class claims and appoint class counsel.  Rule 23(c)(2) requires

class notice.  Rule 23(c)(3) provides that any judgment in a class action must identify and

describe those whom the court finds to be members of the class certified.  Finally, Rule 23(e)

requires that procedures for a proposed settlement or voluntary dismissal of class claims include:

> 1.  The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> 2.  If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable and adequate.

---

[17] *Carlton*, 1997 WL 208962, at *2.

[18] *In re Triarc Cos., Inc.*, 1998 WL 743673, at *4 n.7 (D. Del.); *Carlton*, 1997 WL 208962, at *2.

[19] *Prezant v. De Angelis*, 636 A.2d 915, 923-25 (Del. 1994); *MCA, Inc. v. Matsushita Elec. Indus. Co., Ltd.*, 785 A.2d 625, 635-36 (Del. 2001).

[20] *IPSCO Steel (Alabama), Inc. v. Blaine Constr. Corp.*, 371 F.3d 150, 155 (3d Cir. 2004).

[21] *Swann Keys Civic Assoc. v. Shamp*, 971 A.2d 163, 169 (Del. 2009).

12

570740

\*       \*       \*

> 5.      Any class member may object to the proposal if it requires
> court approval under this subdivision (e)...

The Derivative Settlement does not satisfy any of the requirements of Rule 23. Therefore, it cannot release claims belonging to current or former stockholders of ABC. There has been no certification of the Putative Class or any other class of ABC stockholders. The Judgment does not identify and describe those found to be in a certified class. No class has been defined, and no class representative or class counsel has been appointed. No class action notice has been given. In sum, no release can be given as to the claims of the absent stockholders because the Rule 23 requirements to validly release those claims have not been met.

The Notice is only a derivative notice under Federal Rule of Civil Procedure 23.1, not a Rule 23 class action notice. To satisfy the due process requirements embodied in Rule 23, a settlement notice must be "sent by mail to each class member."[22] The Affidavit of Mailing [D.I. 56-1, p. 4] states that the Notice was only mailed "to each of the registered shareholders of the Company as of August 6, 2014." The published Summary Notice [D.I. 56-1] is likewise directed only to "All Owners of AmerisourceBergen Corporation Common Stock as of August 6, 2014." No notice was mailed to members of the Putative Class or to holders of ABC stock as of any date other than August 6, 2014. Therefore, the members of the Putative Class and other current and former ABC stockholders have been denied due process, and the Derivative Settlement purporting to release class claims cannot be approved.

---

[22] *McGowan Investors LP v. Meyer*, 392 F. App'x 39, 48 (3d Cir. 2010) (citations omitted). *See also In re School Asbestos Litig.*, 921 F. 2d 1330, 1337-38 (3d Cir. 1990) ("[T]he settlement notice was inadequate because it was not mailed to all members of the class as required by Rule 23 (e) and Procedural Due Process.").

13

570740

III.   **THE PROPOSED RELEASE IS OVERBROAD AND INVALID IN OTHER RESPECTS**

A settlement can release claims that were not specifically asserted in the action <u>only if</u> those claims are based on the "same identical factual predicate" or the same set of operative facts as those asserted in the action.[23]   A release is overbroad if it encompasses claims that merely have some relationship, however remote or tangential, to any fact or conduct referred to in the action.[24]   A release of claims should be "clear, and comprehensible," not "so broadly worded and so opaquely written that it is difficult to know precisely how it is supposed to operate."[25]

The Release does not satisfy these criteria.  It would release all claims:

> [T]hat are based upon, arising from, or related to any of the facts, events, occurrences, or circumstances (a) that have been alleged in the Complaint, or in any other pleading in the Action, or (b) that relate to any of the subject matters of the Action and were or could have been asserted in the Action (all of the above are the "Released Claims").  Subject to the foregoing, the Released Claims include, without limitation, claims relating to ABC's 2009 Management Incentive Plan (as amended, restated and renamed the "Equity Incentive Plan" effective January 1, 2011); the Compensation Committee's June 2009 Unanimous Written Consent adjusting the limits of the Equity Incentive Plan; the compensation, including equity compensation under the Plan, awarded to Collis for fiscal years 2012 and 2013; [ABC's] Proxy Statement dated January 18, 2013; ABC's previous proxy statements and other disclosures relating to its incentive compensation plans, the awards granted or compensation paid pursuant to such plans, the tax positions taken by ABC with respect to such awards or compensation, the processes followed and steps taken by Defendants to issue equity

---

[23] *McGowan*, 392 F.App'x at 46; *Phila. Stock Exch.* , 945 A.2d at 146; *Nottingham Partners v. Dana*, 564 A.2d 1089, 1106-07 (Del. 1989); *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 577-78 (E.D. Pa. 2001).

[24] *McGowan*, 392 F.App'x at 46; *Phila. Stock Exch.* , 945 A.2d at 1146; *UniSuper Ltd. v. News Corp.*, 898 A.2d 344, 347 (Del. Ch. 2006); *Green v. Phillips*, 2000 WL 33521109, at *1 (Del. Ch.).

[25] *Green*, 2000 WL 33521109, at *2.   The prolix nature of settlement releases makes it unreasonable to expect the Court to parse through the release with a fine-toothed comb. *UniSuper*, 898 A.2d at 348.

14

or equity-based awards and Defendants' documentation of such
steps and process.

**A.    The Release and Waiver in the Judgment Exceeds the Description in the Notice**

The scope of the Release in the Judgment is too broad because it greatly exceeds the

release described in the Notice. The Notice describes the equity awards granted to Collis in 2012

in excess of the Plan's individual calendar year limit and then states that the claims being

released "are based upon, arise out of, or relate in any way, directly or indirectly, to the stock

options granted to Collis." The Judgment, however, provides for release of all (i) claims relating

to the 2009 Plan, (ii) <u>any</u> compensation to Collis in fiscal years 2012 <u>and</u> 2013 (not just stock

options granted to Collis in November 2012) and (iii) all disclosures prior to the 2013 Proxy

Statement relating to <u>any</u> incentive compensation in any way.

The Notice also states that the "Settling Parties" waive any limitations on releases and the

"Settling Parties" release subsequently discovered claims. The Notice defines "Settling Parties"

as including only "the Individual Defendants, ABC, and Plaintiff." In contrast, paragraph 11 of

the Judgment provides that the "Releasing Parties" have waived limitations on releases and have

released undiscovered claims. Paragraph 10 of the Judgment defines Releasing Parties to include

"the stockholders of ABC" and "their heirs, predecessors, successors, representatives and

assigns." The Notice contains no definition of Releasing Persons. Thus, the Notice fails to

inform ABC's stockholders that they are included in the waiver and release of undiscovered

claims.

The Notice also makes no mention of the permanent injunction of paragraph 12 of the

Judgment or the present injunction of paragraph 9 of the Preliminary Order. Therefore, the

Notice failed to inform the ABC stockholders of the temporary injunctive relief that is currently

15

directed at them or the permanent injunctive relief that will be directed at them if the Settlement is approved.

The release, waiver and injunctive relief granted in the Judgment cannot exceed what the parties' Notice said the Judgment would grant. Therefore, the Derivative Settlement should not be approved because the Judgment contains a release that is not limited to claims based on the 2012 grant of options to Collis, includes a waiver by stockholders that was not mentioned in the Notice and enters injunctive relief against the stockholders when the Notice gave them no warning that such an injunction would issue.

### B.   The Release Improperly Extends Beyond the Operative Facts of the Delaware Action

The derivative claims in the Delaware Action are based solely on a single violation of the Plan's annual per-person limit in a single calendar year. The Release sought in the Derivative Settlement is overbroad because it would extinguish claims that do not arise out of the same "operative facts" as the derivative claims asserted in the Delaware Action, *i.e.*, the grant of excess equity compensation to defendant Collis in 2012. The Release is not limited to all claims based upon, arising from, or related to any of the facts, events, occurrences or circumstances alleged in the Delaware Complaint or any other pleading in the Delaware Action. Rather, the Release also applies to all claims:

> [T]hat are based upon, arising from, or related to any of the facts, events, occurrences, or circumstances … that relate to any of the subject matters of the Action and were or could have been asserted in the Action.

The Release cannot properly apply to claims that only have some relationship to any fact, however tangential or remote, that merely relates to a "subject matter" that was or could have

16

been mentioned at some point during the Delaware Action.[26]   Indeed, the Release is virtually limitless because the "subject matters" that could have been referenced during the Delaware Action are so broad that practically any claim with some tangential relationship to ABC is released. A release of indeterminate or indefinite breadth cannot be approved.

The list of "subject matters" that are specifically included "without limitation" in the Release also demonstrates that the Release encompasses matters that are beyond the operative facts, and in some cases even the tangential facts, relating to the Action.

First, the Release specifically includes "the compensation, including equity compensation under the Plan, awarded to Collis for fiscal years 2012 and 2013." However, the Delaware Complaint only discussed a specific grant of equity compensation under the Plan. That grant in November 2012 was in calendar year 2012, but also in fiscal year 2013, which Paragraph 7 of the recitals of the Settlement Agreement indicates ran from October 1, 2012 through September 30, 2013. The Delaware Complaint did not reference other forms of compensation for fiscal year 2013 or any form of compensation for fiscal year 2012. Moreover, Collis received compensation during fiscal 2013, including equity compensation under the Plan (e.g., the replacement Grants), after the Delaware Complaint was filed. Such later compensation was plainly not part of the operative facts that formed the basis of claims of the Delaware Complaint.[27]

Second, though the Delaware Action only referred to the 2013 Proxy Statement, the Release includes "ABC's previous proxy statements and other disclosures." The Delaware Complaint only challenged the disclosure in the 2013 Proxy Statement related to the November 2012 option grant to Collis pursuant to the 2009 Plan. However, the Release includes all

---

[26] *Green*, 2000 WL 33521109, at *1; *UniSuper*, 898 A.2d at 347.

[27] Similarly, the Release specifically includes all claims relating to the Plan, though the Delaware Action challenged a single grant under the Plan.

17

disclosures in all prior proxy statements and other disclosure documents "relating to" any aspect of the 2009 Plan or any other incentive compensation plan.  The Release applies not just to disclosures about the November 2012 option grant to Collis under the 2009 Plan, but to all disclosures concerning any of "the awards granted or compensation paid" to anyone at any time under any of ABC's incentive compensation plans.  All disclosures about ABC's tax positions, the "processes followed and steps taken" in granting "awards or compensation" and the documentation of such "steps and processes" are also within the expansive scope of the Release.

Because the Release extends far beyond the operative facts alleged in the Delaware Action, it is overbroad and the Settlement should not be approved.

### C.    Improper Release of Future Claims

A release cannot apply to claims challenging future conduct.[28]  The Release would bar claims against ABC's "*future* officers, directors, employees, partners, members, representatives, agents, insurers, consultants, attorneys, and assigns of any of them." (Emphasis added).  Claims against persons who become affiliated with ABC in the future would necessarily involve future conduct.  Therefore, the Release is overbroad.

---

[28] *UniSuper*, 898 A.2d at 348; *see also Phila. Stock Exch.*, 945 A.2d at 1146.

18

570740

## CONCLUSION

For the reasons set forth herein, ICLUB respectfully requests that the Court sustain its

objection and refuse to approve the Derivative Settlement.

Respectfully submitted,


OF COUNSEL;                              PRICKETT, JONES & ELLIOTT, P.A.

**KESSLER TOPAZ**                        */s/ Michael Hanrahan*
**MELTZER & CHECK, LLP**                 Michael Hanrahan (DE Bar No. 941)
Eric L. Zagar                            Paul A. Fioravanti, Jr. (DE Bar No. 3808)
Matthew A. Goldstein                     Eric J. Juray (DE Bar No. 5765)
280 King of Prussia Road                 1310 N. King Street
Radnor, Pennsylvania 19087               Wilmington, Delaware 19801
(610) 667-7706                           (302) 888-6500
                                         mhanrahan@prickett.com
Dated:  October 14, 2014                 pafioravanti@prickett.com
                                         ejjuray@prickett.com

570740