IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELI MOR, derivatively on behalf of AMERISOURCEBERGEN CORPORATION and individually on behalf of himself and all other similarly situated shareholders of AMERISOURCEBERGEN CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> STEVEN COLLIS, et al., <br><br> Defendants, <br><br> and <br><br> AMERISOURCEBERGEN CORPORATION, a Delaware Corporation, <br><br> Nominal Defendant. | Civil Action No. 13-242-RGA |

## MEMORANDUM OPINION

Brian E. Farnan, Esq. (argued), Rosemary J. Piergiovanni, Esq., FARNAN LLP, Wilmington, DE; Eduard Korsinsky, Esq., Douglas Julie, Esq. (argued), LEVI & KORSINSKY LLP, New York, NY.

    Attorneys for Plaintiff.

Geoffrey G. Grivner, Esq., BUCHANAN INGERSOLL & ROONEY PC, Wilmington, DE; Steven E. Bizar, Esq. (argued), Thomas P. Manning, Esq., BUCHANAN INGERSOLL & ROONEY PC, Philadelphia, PA.

    Attorneys for Defendants and Nominal Defendant.

Michael Hanrahan, Esq. (argued), Paul A. Fioravanti, Esq., PRICKETT, JONES & ELLIOTT, P.A., Wilmington, DE; Eric L. Zagar, Esq., Matthew A. Goldstein, Esq., KESSLER TOPAZ MELTZER & CHECK, LLP, Radnor, PA.

    Attorneys for ICLUB Investment Partnership.

June 30, 2015

ANDREWS, U.S. DISTRICT JUDGE:

Presently before the Court are Plaintiff's and ICLUB Investment Partnership's ("ICLUB") requests for attorney's fees. Plaintiff and Defendants agreed upon $1 million in attorney's fees in their stipulation of settlement, which they submitted for court approval on August 15, 2013. (D.I. 26 at 7–9). Plaintiff submitted a memorandum in support of its request for $1 million in attorney's fees on September 30, 2014. (D.I. 57). On October 14, 2014, ICLUB filed a petition for attorney's fees and reimbursement of expenses (D.I. 62) and a supporting brief. (D.I. 63). Plaintiff submitted an answering brief to ICLUB's petition on October 23, 2014. (D.I. 72). Oral argument was held on October 28, 2014. (D.I. 77). For the reasons that follow, Plaintiff is entitled to attorney's fees, but ICLUB is not. The Court will award Plaintiff $550,000 in attorney's fees.

I. BACKGROUND

In considering the fee request, I think it is worth considering the litigation history. Plaintiff filed the complaint on February 15, 2013. (D.I. 1). Before the complaint was filed, Plaintiff's lead counsel spent about 63.5 hours of lawyer and paralegal time investigating the matter, finding a client, and drafting the complaint. (D.I. 71-1 at 5–6). Plaintiff's complaint was based on public record information (which perhaps explains why at more or less the same time, ICLUB was filing suit in the Eastern District of Pennsylvania, KBC Asset Management, N.V. ("KBC")[1] was making a books and records demand on Defendant AmerisourceBergen Corp. ("ABC"), and some other plaintiff was filing suit in Chester County, Pennsylvania). Defendants

---

[1] KBC moved to intervene in this case on July 11, 2013 (D.I. 20), informing the Court of its books and records demand filed in the Delaware Court of Chancery. (D.I. 21). In light of KBC's motion, the Court stayed the stipulation of settlement in the present case, and dismissed without prejudice Defendants' Motion to Dismiss and KBC's Motion to Intervene. (D.I. 27). On July 23, 2014, KBC informed the Court that it had reached an agreement with ABC to resolve its books and records lawsuit, and would not be renewing its Motion to Intervene. (D.I. 54).

1

responded with a motion to dismiss on April 12, 2013. (D.I. 11). Plaintiff's answering brief was filed May 3, 2013. (D.I. 15). Plaintiff's attorneys and paralegals thus spent about another 172 hours, through May 3, 2013, mostly working on the answering brief in opposition to the motion to dismiss. (D.I. 71-1 at 5–11). On May 17, 2013, Defendants filed their reply brief. (D.I. 17). As Plaintiff states, "Shortly after the motion to dismiss was fully briefed the parties entered into settlement discussions." (D.I. 57 at 9). Indeed, Plaintiff did not wait for the briefing to be complete to start working on settlement. Time entries beginning May 6, 2013 reflect that the attention of the attorneys working on the case was directed to settlement: "preparation for settlement discussions," "communications regarding settlement," "attention to potential settlement," and, by May 14, 2013, "drafted settlement demand." (D.I. 71-1 at 11–12). As a rough approximation, lead counsel for Plaintiff had put about $150,000 worth of time into the case when counsel turned its focus from litigation to settlement.

On February 7, 2013, prior to the filing of Plaintiff's complaint, ICLUB, another stockholder of ABC, initiated a substantially similar action in the United States District Court for the Eastern District of Pennsylvania. (D.I. 64-1). On April 12, 2013, Defendants filed a motion in the Pennsylvania District Court to transfer the Pennsylvania action to the District of Delaware. (D.I. 64-12). In response, ICLUB filed an answering brief opposing the motion to transfer and a cross-motion to enjoin the Delaware action. (D.I. 64-13). ICLUB submitted a letter to this Court on April 26, 2013, informing the Court of the pending motions in the Pennsylvania action and ICLUB's opposition to Defendants' motion to transfer. (D.I. 14). Defendants submitted a letter in response on May 20, 2013. (D.I. 19).

On July 26, 2013, Plaintiff and Defendants entered into a memorandum of understanding to settle the present action, and filed a letter informing the Court that same day. (D.I. 23).

Pursuant to the proposed settlement, ABC filed a Form 8-K with the Securities and Exchange Commission, dated August 7, 2013. (D.I. 30-3 at 3). ABC explained that in November 2012, the company changed its equity award policy, and began reviewing annual equity awards in November, rather than in February and March. (*Id.*). As a result of this change, ABC noted that the equity awards for the 2012 and 2013 fiscal years were made in the same calendar year. (*Id.*). ABC admitted that "[a] portion of the November 2012 option was void because the aggregate number of shares of Common Stock subject to equity grants made to Mr. Collis in calendar year 2012 inadvertently exceeded the per person limit under the Plan by 272,423 shares." (*Id.*). For this reason, ABC reduced the number of stock options granted to Mr. Collis for the 2012 calendar year by 272,423. (*Id.*). On the same date, ABC granted Mr. Collis an equity award of 185,821 new stock options, intending to replace the value of the voided options. (*Id.*).

The parties filed a stipulation of settlement on August 15, 2013. (D.I. 26). On January 6, 2014, Defendants informed the Pennsylvania District Court that the parties in the Delaware action had agreed to settle, which they asserted would moot the claims in all other actions. (D.I. 64-22). On January 7, 2014, the Pennsylvania District Court entered an order placing the Pennsylvania action in civil suspense pending resolution of the Delaware action. (D.I. 64-18). This Court issued an order preliminarily approving the proposed settlement agreement on August 6, 2014. (D.I. 55). ICLUB filed an objection to the proposed settlement agreement and an intent to appear on October 14, 2014.[2] (D.I. 61). The parties agreed to revise the final order and judgment, and ICLUB withdrew its objection. (D.I. 70). The Court issued a final order and judgment approving the settlement on October 28, 2014, leaving the issues about attorney's fees to be determined. (D.I. 74).

---

[2] Burton L. Raimi, another stockholder of ABC, filed a letter with the Court objecting to the proposed settlement as well. (D.I. 60).

## II. LEGAL STANDARD

"In diversity cases, we apply state rules concerning the award of attorneys' fees." *Sec. Mut. Life Ins. Co. of New York v. Contemporary Real Estate Assocs.*, 979 F.2d 329, 331–32 (3d Cir. 1992). "In the realm of corporate litigation, the Court may order the payment of counsel fees and related expenses to a plaintiff whose efforts result in the creation of a common fund, or the conferring of a corporate benefit." *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1164 (Del. 1989) (citations omitted). "Under the common fund doctrine, a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1252–53 (Del. 2012) (internal quotation marks omitted). "[S]uccessful derivative or class action suits which result in the recovery of money or property wrongfully diverted from the corporation, or which result in the imposition of changes in internal operating procedures that are designed to produce such monetary savings in the future, are viewed as fund creating actions." *Tandycrafts*, 562 A.2d at 1164–65.

Under the common corporate benefit doctrine, "a litigant who confers a common monetary benefit upon an ascertainable shareholder class is entitled to an award of counsel fees and expenses." *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997). In order to be entitled to an award of attorney's fees under the common corporate benefit doctrine, the applicant must show that: "(1) the suit was meritorious when filed; (2) the action producing benefit to the corporation was taken by the defendants before a judicial resolution was achieved; and (3) the resulting corporate benefit was causally related to the lawsuit." *Cal-Maine Foods, Inc. v. Pyles*, 858 A.2d 927, 928–29 (Del. 2004) (quoting *United Vanguard*, 693 A.2d at 1079). "While the benefit achieved may have an indirect economic effect on the corporation . . .

4

the benefit need not be measurable in economic terms. Changes in corporate policy or . . . a heightened level of corporate disclosure, if attributable to the filing of a meritorious suit, may justify an award of counsel fees." *Tandycrafts*, 562 A.2d at 1165.

## III. DISCUSSION

### A. Plaintiff's Request for Attorney's Fees

#### 1. *Sugarland* Factors

The Delaware Supreme Court has made clear that determining an award of attorney's fees is "within the sound judicial discretion" of the court. *In re Infinity Broad. Corp. S'holders Litig.*, 802 A.2d 285, 293 (Del. 2002). When evaluating the reasonableness of a fee award, the court must consider the following factors: "(1) the results accomplished for the benefit of the shareholders; (2) the efforts of counsel and the time spent in connection with the case; (3) the contingent nature of the fee; (4) the difficulty of the litigation; and (5) the standing and ability of counsel involved." *Id.* (citing *Sugarland Indus., Inc. v. Thomas*, 420 A.2d 142, 149 (Del. 1980)). "[T]ime is also a relevant inquiry in determining fee awards." *In re Abercrombie & Fitch Co. S'holders Derivative Litig.*, 886 A.2d 1271, 1273 (Del. 2005). When applying the *Sugarland* factors, "Delaware courts have assigned the greatest weight to the benefit achieved in litigation." *Ams. Mining*, 51 A.3d at 1254. "When the benefit is quantifiable . . . by the creation of a common fund, *Sugarland* calls for an award of attorneys' fees based upon a percentage of the benefit." *Id.* at 1259. "Under a percentage of the fund method, courts calculate fees based on a reasonable percentage of the common fund." *Id.* at 1253.

#### a. Benefit Conferred

Plaintiff argues that "[t]he cancellation of 272,423 of the stock options forfeited by Collis conferred a monetary benefit on ABC." (D.I. 57 at 18). ABC cancelled Mr. Collis's excess

options in accordance with the settlement agreement between Plaintiff and Defendants, which states that "[t]he Compensation Committee and/or the Board will cancel, and Collis shall relinquish all rights to 272,423 of the stock options awarded to Collis on November 14, 2012 pursuant to the Plan." (D.I. 26 at 5, II.A ¶ 1). Plaintiff's and ICLUB's experts agree that the spread value of the 272,423 cancelled options, as of the cancellation date, August 7, 2013, would have been about $5.048 million. (D.I. 30-12 ¶ 9(c) & D.I. 66 ¶ 4). Plaintiff's expert notes that the "updated Black-Scholes value" of the cancelled stock options would have been even higher than the spread value because the options would not have expired for another six years. (D.I. 30-12 ¶ 9(d)). Plaintiff's expert also explains that even if the cancelled options were offset by the 185,821 options issued to Mr. Collis in August 2013, "the 86,602 net balance of the recovered shares . . . had a face value of more than $5.087 million as of August 7, 2013." (Id. ¶ 9(f)). Thus, Plaintiff argues that the cancellation of Mr. Collis's excess stock options created a common fund in the amount of $5.048 million—the "spread value" of the 272,423 cancelled options.

In my opinion, however, the common fund calculated by determining the spread value of the returned excess stock options overstates the significance of the recovery predicated as it is by the value of a volatile asset on the day it was returned. Once the various lawsuits and records demands were made in February 2013, the excess stock options were, for all practical purposes, frozen. They were going to end up back with ABC. On February 15, 2013, the stock closing price was $45.24 per share. The spread value then was $1,370,287.69. As of June 29, 2015, the per share value of ABC stock was about $106, more than double what it was on August 7, 2013. Thus, depending on the perspective taken, the benefit to ABC caused solely by this lawsuit is smaller than Plaintiff's argument suggests, as most of the benefit has arisen from the rapid

6

appreciation of the stock. Nonetheless, for purpose of this analysis, I accept that the benefit to ABC is $5.048 million.

Plaintiff also argues that ABC received an additional benefit in the form of corporate governance reforms that are intended to prevent future violations of the compensation limits provided by ABC's equity incentive plan. (D.I. 57 at 19). These types of corporate governance reforms constitute the "changes in internal operating procedures" that the Delaware Supreme Court referred to in its *Tandycrafts* decision. The Delaware Court of Chancery has also held that corporate governance reforms can provide a substantial corporate benefit, even if they are non-pecuniary in nature. *See Ryan v. Gifford*, 2009 WL 18143, at *10 (Del. Ch. Jan. 2, 2009). The court in *Gifford* made clear that non-monetary recovery, such as cancellation and surrender of stock options and "significant corporate governance reforms designed to prevent future wrongful option grants" were "properly considered by the Court in determining a fee award and in the past [have] served as the sole basis for a fee award." *Id.* at *13. While *Gifford* involved willful misconduct in the form of option backdating, and required more significant corporate governance reforms, the reforms here are reasonably likely to prevent the conduct that gave rise to the present litigation. The added procedures require ABC's board of directors to obtain written certification from ABC's general counsel, verifying that all awards made under the management incentive plan conform to the terms of the plan. (D.I. 26 at 6, II.A ¶ 2(a)). The corporate governance reforms also require written certification that all amendments to the management incentive plan have been disclosed in ABC's SEC filings. (*Id.* ¶ 2(b)). These "changes in internal operating procedures" were "designed to prevent future wrongful option grants," and thus are properly considered in the attorney's fees analysis. That being said, the corporate governance reforms are fairly modest. Therefore, Plaintiff conferred a benefit to ABC

7

in the form of a common fund and corporate governance reforms, but, in my opinion, that benefit is not commensurate with the agreed-upon fee award.

### b. Time and Effort Expended

The parties were in the very early stages of litigation when settlement discussions began, and settled the case before any discovery had commenced. Nevertheless, Plaintiff's counsel spent 63.5 hours on the case prior to filing the complaint, and another 172 hours through the motion to dismiss. Thus, Plaintiff's attorneys spent a total of 235.5 hours, amounting to around $150,000 in attorney's fees, prior to shifting their focus to settlement. The early stage at which the case settled, and the low number of hours spent prior to settlement, suggest a smaller fee award.

### c. Complexity of Litigation

The present case was less complicated than most shareholder derivative actions. The case was developed from public disclosures, and the only complexity was the jockeying among the shareholders' attorneys for their pieces of the pie. In my opinion, this matter would have been an appropriate matter for a demand on the board. It was a "one-off" mistake by ABC. ABC should, of course, have been more careful, but what happened here was not corporate malfeasance, it was corporate carelessness. The relative straightforwardness of this case suggests a smaller fee award.

### d. Contingent Nature of Representation

Plaintiff's counsel initiated the current litigation on a contingency fee basis, which supports an award of attorney's fees. (D.I. 59 ¶ 3).

e.     **Standing and Ability of Counsel**

I have no reason to question the standing and ability of Plaintiff's counsel. The firm of Levi & Korsinsky LLP has extensive experience litigating shareholder derivative actions, and Farnan LLP has extensive experience litigating before this Court. (D.I. 57 at 24–25).

2.     **Amount of Fee Award**

Plaintiff and Defendants agreed to an award of $1 million in attorney's fees in the stipulation of settlement, and agreed that this amount is fair and reasonable. (D.I. 26 at 7, II.D ¶¶ 1–2). "In reviewing the settlement of a derivative suit, the Court must determine, using its business judgment, whether the settlement terms are fair, reasonable, and adequate." *Gifford*, 2009 WL 18143, at *5. I recognize that "a court should give weight to an agreement regarding attorneys' fees," but Delaware courts have made clear that such a rule "does not require blind acceptance." *In re Abercrombie*, 886 A.2d at 1275. Rather, the court "must make an independent determination of reasonableness on behalf of the common fund's beneficiaries, before making or approving an attorney's fee award." *Goodrich v. E.F. Hutton Grp., Inc.*, 681 A.2d 1039, 1046 (Del. 1996). "[T]he weight given derives from and depends on the court's sense of confidence that the negotiations over the fee agreement were conducted in good faith and had no effect on the other terms of the settlement. *In re Prodigy Commc'ns Corp. S'holders Litig.*, 2002 WL 1767543, at *6 (Del. Ch. July 26, 2002). The Delaware Supreme Court has recognized that "[w]hen a case settles early, the Court of Chancery tends to award 10–15% of the monetary benefit conferred," and "[w]hen a case settles after the plaintiffs have engaged in meaningful litigation efforts, typically including multiple depositions and some level of motion practice, fee awards in the Court of Chancery range from 15–25% of the monetary benefits conferred." *Ams. Mining*, 51 A.3d at 1259–60.

9

The present litigation resulted in the creation of a common fund, and thus, I will apply the percentage of the common fund method to determine a reasonable fee award. The common fund equals $5.048 million, and the agreed-upon $1 million fee award amounts to 19.8% of the common fund. While I have no doubt that the parties negotiated the settlement in good faith, I believe that the amount of attorney's fees agreed upon far exceeds what is appropriate in this case. I am giving weight to the agreement, because, but for the agreement, I would think $250,000 was about what reasonable attorney's fees would be. In light of the Delaware Supreme Court's statements in *Americas Mining* regarding settlements that occur in the early stages of litigation, and according to my own business judgment, *see Gifford*, 2009 WL 18143, at *5, I think a reasonable fee award is $550,000, which is roughly 10% of the common fund plus $50,000 for the corporate governance reforms.

## B. ICLUB's Petition for Attorney's Fees

ICLUB argues that it is entitled to an award of attorney's fees under the corporate benefit doctrine. (D.I. 63 at 16–17). Plaintiff does not dispute that ICLUB's action was meritorious when filed, or that the action producing benefit was taken before judicial resolution. Thus, the only point of dispute is whether the corporate benefit received by ABC is causally related to ICLUB's efforts in the Pennsylvania litigation.

ICLUB argues that it is entitled to a rebuttable presumption that its action brought in the Eastern District of Pennsylvania was among the causes of the benefit received by ABC. (*Id.* at 21). The Delaware Supreme Court has made clear that "[w]hen a case is litigated in Delaware, our courts recognize a presumption that there is a causal relationship between the benefit and a timely filed suit," and "[t]o overcome this presumption, defendants have the burden of demonstrating that the lawsuit did not in any way cause their action." *Alaska Elec. Pension*

10

*Fund v. Brown*, 941 A.2d 1011, 1015 (Del. 2007) (internal quotation marks omitted). "Where . . . similar lawsuits are litigated in multiple jurisdictions," however, "the presumption of a causal relationship generally applies only to the Delaware litigation." *Id.* "[A]ttorneys who litigate in other jurisdictions are entitled to share in a Delaware fee award, if their efforts elsewhere conferred a benefit realized as part of the Delaware settlement. But, they must substantiate their contribution to the result achieved."[3] *Id.* (internal quotation marks omitted). "When determining the amount and distribution of an award, the mere pendency of litigation alone does not establish the causal connection between counsel's efforts and changes in the merger terms that benefit the shareholder class." *In re Infinity*, 802 A.2d at 293.

Here, ICLUB was not a plaintiff in the Delaware action, and thus is not entitled to the presumption of causation. Therefore, ICLUB has the burden of substantiating its contribution to the benefit received by ABC. The only argument ICLUB presents in its briefing is that ABC cancelled the excess stock options after ICLUB filed its complaint in the Eastern District of Pennsylvania. (D.I. 63 at 22). Plaintiff, on the other hand, argues that the benefit to ABC was created by the settlement between Plaintiff and Defendants, which ICLUB played no part in negotiating. (D.I. 77 at 23:13–24). ICLUB maintains that the benefit to ABC was not the settlement itself, but rather the cancellation of the excess options. (*Id.* at 37:4–9). While I agree that cancellation of Mr. Collis's wrongfully issued stock options was the benefit to ABC, ICLUB has not presented any evidence showing that its litigation in Pennsylvania had an impact on ABC's decision to cancel those options. ICLUB contends that the actual settlement agreement

---

[3] The Delaware Supreme Court explains that "it is reasonable to presume that, if the Delaware plaintiffs are able to negotiate a settlement, they, rather than out-of-state plaintiffs, are the ones who contributed to the benefit." *Alaska Elec.*, 941 A.2d at 1015. Further, "the trial court is able to determine an appropriate fee award based on its knowledge of the Delaware plaintiffs' activities in court." *Id.* Finally, "if the presumption were extended to all plaintiffs litigating similar claims in other jurisdictions, such a rule would encourage the filing of multiple 'mere pendency' lawsuits, wasting judicial resources and making it more difficult to reach settlements." *Id.*

was not important because the options could have been canceled without an agreement. (*Id.* at 37:23–24). This, however, did not occur. ABC canceled the excess stock options only after Plaintiff and Defendants entered into a memorandum of understanding with regard to settlement. One of the terms of the settlement agreement was canceling the excess options. ICLUB does not claim to have played any part in negotiating the settlement agreement between Plaintiff and Defendants, and opposed transferring its case to the District of Delaware. Thus, the cancellation of Mr. Collis's options was a direct result of the settlement agreement between Plaintiff and Defendants, and did not result from the mere pendency of ICLUB's litigation in the Eastern District of Pennsylvania. I conclude that ICLUB's action in Pennsylvania was not causally related to the cancellation of the excess stock options.

ICLUB also argues that it caused further benefit to ABC by negotiating amendments to the final order and judgment prior to the Court's approval of the settlement. (*Id.* at 46:17–49:17). In its objection to the proposed settlement agreement, ICLUB argued that the proposed release was overly broad and exceeded the release described in the notice sent to stockholders. (D.I. 61 at 19). ICLUB also argued that the original release was not limited to the claims arising out of the circumstances alleged in the Delaware complaint. (*Id.* at 20). Finally, ICLUB argued that the original release applied to claims arising not only out of past conduct by Defendants, but also out of future conduct. (*Id.* at 22). Prior to oral argument, the parties submitted an amended final order and judgment that incorporated ICLUB's changes, and ICLUB withdrew its objection. While ICLUB's amendments were incorporated into the final order and judgment, they did not contribute to the cancellation of the excess options or seek to prevent wrongful issuances of stock options in the future. The amendments merely protected the prospect of future litigation, the likelihood of which I have no way of determining. Thus, ICLUB's amendments did not

confer a cognizable corporate benefit to ABC. It follows that ICLUB is not entitled to an award of attorney's fees.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's request for attorney's fees is granted, and ICLUB's petition for attorney's fees is denied. Plaintiff is awarded $550,000 in attorney's fees and expenses. A separate order consistent with this memorandum opinion will be issued.